# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| GREGORY PAUL BADY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO. 1:14-cv-00190-SLC |
| | ) |
| D. BENNETT, *Police*, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

*Pro se* Plaintiff Gregory Paul Bady ("Bady") brings this 42 U.S.C. § 1983 action against Defendants City of Marion Police Officers D. Bennett and Thomas (together, "the Officers"), alleging that they violated his Fourteenth Amendment right to equal protection under the laws by falsifying a police report and suspending the criminal case against an individual who purportedly battered him.[1] (DE 1). Now before the Court is the Officers' motion for summary judgment (DE 26), which is fully briefed (DE 27; DE 31 to DE 33), asserting that the Officers are entitled to judgment as a matter of law on Bady's equal protection claim.

For the following reasons, the Officers' motion for summary judgment will be GRANTED.

### *A. Factual and Procedural Background* [2]

Bady contends that he was battered by his cousin, James Daniel Gilmer, on June 18, 2013. (DE 31 at 14-23; DE 27-2 at 4). Although Bady occasionally allowed Gilmer to visit his home, Gilmer appeared without invitation at Bady's home on the day of the incident. (DE 31 at

---

[1] Subject matter jurisdiction exists under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 17).

[2] For summary judgment purposes, the facts are recited in the light most favorable to Bady, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

16-17; DE 27-2 at 4-5). Bady states that the two were having a conversation when Gilmer hit him in the face with a silver object. (DE 31 at 16; DE 27-2 at 4). Bady further states that he was knocked out and was unresponsive, and thus, he was not interviewed by police officers at the scene. (DE 31 at 16; DE 27-2 at 4). He recalls being put in an ambulance and being interviewed by non-party Officer K. Elliott while at Marion General Hospital, relaying to Officer Elliott that Gilmer had hit him in the face with a silver object. (DE 31 at 16; DE 27-2 at 4).

In his narrative report dated June 18, 2013, Officer Bennett indicated that he took a report from Bady while at Marion General Hospital. (DE 31 at 10). Officer Bennett documented that Bady reported Gilmer "sucker punched" him and that Bady wanted Gilmer to do 30 days in jail and to pay for his medical expenses. (DE 31 at 10). Officer Bennett wrote that Bady had refused to cooperate with Officer Thomas at the scene. (DE 31 at 11). The following day, Gilmer gave Officer Bennett a taped statement, claiming that he was defending himself and struck Bady only after Bady had charged at him. (DE 31 at 11). Officer Bennett concluded that the incident between Bady and Gilmer was "mutual combat," and he suspended the case. (DE 31 at 11).

When Bady saw Officer Bennett's report and learned that the case against Gilmer was suspended, he wrote the prosecutor and the chief of police, asserting that the investigating officers did a poor job investigating the case. (DE 31 at 12-13). Bady complained that no officer came back to interview him when he was fully conscious; he also asserted that the statement of a witness, Daniel Mongar, was mischaracterized in Officer Bennett's report.[3] (DE

---

[3] Bady submits statements from two witnesses to the incident, Daniel Mongar and Deanna Futrell. (DE 31 at 18; DE 21 at 7). Mongar stated in an undated, sworn statement that Gilmer was the aggressor and that Bady never charged at Gilmer. (DE 31 at 18). Mongar further stated that Bady "could barely stand due to drinking" and that he did not believe Bady would have been a threat to Gilmer. (DE 31 at 18). Futrell articulated in a sworn statement dated October 30, 2015, that Gilmer and Bady were having a conversation when Gilmer suddenly struck Bady in the

2

31 at 12). Bady asked that his statement, and the statements of his witnesses, be reviewed and that Gilmer be arrested for assault and battery. (DE 31 at 12-13). Bady stated that he had sustained damages in excess of $20,000 to his eye and face. (DE 31 at 12; DE 21 at 14).

On January 17, 2014, seven months after the incident, Gilmer was charged with battery as a result of his altercation with Bady on June 18, 2013. (DE 27-3 at 2). Gilmer ultimately pled guilty to a charge of disorderly conduct and was placed on probation. (DE 27-3 at 2).

Bady filed the instant case against the Officers on June 19, 2014, alleging that they violated his right to equal protection under the laws by purportedly falsifying the police report about the incident and suspending the battery charge against Gilmer. (DE 1 at 2).

### B. Standard of Review

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing

---

face, rendering Bady unconscious. (DE 21 at 7).

3

contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citation omitted).

### C. Discussion

Equal protection claims are claims of discrimination. *See Lunini v. Grayeb*, 395 F.3d 761, 767-70 (7th Cir. 2005) (explaining that a plaintiff advancing an equal protection claim bears the burden of demonstrating "that he suffered unequal treatment—the essence of an equal protection violation is, after all, *discrimination* of some sort"). "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citation omitted).

"In the usual equal protection case the plaintiff is complaining about discrimination against a group to which he belongs, such as a racial minority." *Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 712 (7th Cir. 2004); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To succeed on such an equal protection claim, a plaintiff "must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001) (citations omitted). A plaintiff may establish a "discriminatory effect" by showing that he (1) is a member of a protected class, (2) is "otherwise similarly situated to members of the unprotected class," and (3) was treated differently from members of the unprotected class. *Id*. at 636. A plaintiff may establish that the defendant treated him differently than other similarly situated individuals "by naming such individuals or through the use of statistics[.]" *Id*.

Alternatively, "an individual who does not claim membership in any group narrower than the human race can still obtain a remedy under the equal protection clause for 'irrational and wholly arbitrary' treatment." *Ind. Land Co., LLC*, 378 F.3d at 712 (quoting *Olech*, 527 U.S. at 565). This is referred to as a "class of one" equal protection claim. *Id*. To survive summary judgment on a class-of-one equal protection claim, a plaintiff must produce facts showing that (1) the defendants intentionally treated him differently than other similarly situated individuals; and (2) there is no rational basis for the different treatment. *See Olech*, 527 U.S. at 564; *Hanes v. Zurick*, 578 F.3d 491, 494 (7th Cir. 2009). That is, the plaintiff must identify someone who was similarly situated to him but treated differently. *See United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) ("[T]he class-of-one challenger and his comparators must be *prima facie* identical in all relevant respects or directly comparable . . . in all material respects." (citations and internal quotation marks omitted)); *RJB Props., Inc. v. Bd. of Educ. of the City of Chi.*, 468 F.3d 1005, 1010 (7th Cir. 2006); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).

Here, Bady's complaints center on the fact that his purported assailant, Gilmer, was not arrested until Bady wrote a letter to the prosecutor and the chief of police asking that Gilmer be arrested. (DE 31 at 3). Bady argues that it cannot be "normal protocol for victims of ass[a]ult or any other crime . . . to have to write a letter to the District attorney and the chief of police to get the perpetrator of that crime arrested and charged." (DE 31 at 3). Bady further asserts that the Officers falsified information in the report of the incident by: (1) stating that he refused to cooperate at the scene; (2) mischaracterizing a witness's statement; and (3) concluding that the incident was "mutual combat." (DE 31 at 4-6). Bady perceives that these purported discrepancies in the police report and the Officers' suspension of the case against Gilmer are sufficient to support his equal protection claim against the Officers.

Bady's perspective of his equal protection claim, however, is not supported by the law. As an initial matter, Bady does not allege in his complaint that he was part of a protected or special class or that he was treated differently from similarly situated individuals in the unprotected class. Consequently, the Officers construe his complaint as advancing a class-of-one equal protection claim. In his response brief, however, Bady asserts that he did not know he had to be part of a protected or special class to advance his equal protection claim, and in any event, "he is part of an African-American community that has suffered both police brutality and in this case police neglect." (DE 31 at 7). This sentence in Bady's response brief is the only reference of record to his membership in a protected class.

Ultimately, however, it is not pivotal whether Bady is now attempting to advance an equal protection claim based on his race or whether he is solely advancing a class-of-one equal protection claim, as in either case his claims fail to survive summary judgment. This is because Bady fails to show that the Officers treated him differently than other victims of alleged battery incidents. More specifically, with respect to an equal protection claim based on his race, Bady does not produce any evidence that he was, in fact, treated differently than a similarly situated individual who was not African American—one of the required elements of a typical equal protection claim. *See Chavez*, 251 F.3d at 635-36. Likewise, with respect to a class-of-one equal protection claim, Bady does not produce evidence that he was, in fact, treated differently than other similarly situated individuals, which is a required element of a class-of-one claim. *Hanes*, 578 F.3d at 494; *McDonald*, 371 F.3d at 1001.

In fact, Bady concedes in his response brief that he "cannot point to a specific case where these defendants treated someone similarly situated differently th[a]n he." (DE 31 at 3); *see*

6

*McDonald*, 371 F.3d at 1002 (stating that a class-of-one equal protection claim must fail where the plaintiff has "failed to identify someone who is similarly situated but intentionally treated differently than he" (citation omitted)). Bady's failure to produce such evidence rings the death knell for his equal protection claims against the Officers. *See id.* ("[A] court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." (citations omitted)); *see, e.g.*, *Lunini*, 395 F.3d at 769-70 (granting summary judgment on plaintiff's equal protection claim arising from a failure to arrest his former boyfriend, where the plaintiff presented no evidence that the officers treated him differently than other citizens in domestic violence incidents, noting there was no indication that the police department always arrests an alleged assailant when responding to a domestic violence report).

In sum, because no reasonable jury could conclude that Bady has produced evidence sufficient to satisfy the similarly situated requirement of either a typical equal protection claim or a class-of-one equal protection claim, the Officers' motion for summary judgment will be granted, and Bady's equal protection claims against the Officers will be dismissed. *See generally Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (citation and internal quotation marks omitted)).

### D. Conclusion

For the foregoing reasons, the Officers' motion for summary judgment (DE 26) is GRANTED, and Bady's claims against the Officers are DISMISSED. The Clerk is DIRECTED

to enter judgment in favor of the Officers and against Bady.

SO ORDERED.

Entered this 24th day of May 2016.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge